## AUERBACH *v.* FREEMAN.

FALSE ARREST; MALICIOUS PROSECUTION.

1. An action for false arrest and imprisonment is one of trespass, and can be maintained only when the arrest is made without legal process; while the action for malicious prosecution is one of trespass on the case, and is maintainable when the process of the law has been perverted and improperly used without probable cause and for a malicious purpose.

2. An action for malicious prosecution is not maintainable when the plaintiff was arrested for petit larceny, but without a warrant having been issued, although the defendant threatened prosecution after the arrest; as in such an action the plaintiff must allege and prove a discharge and termination of the criminal proceeding, so that when no criminal proceeding has been legally instituted by an arrest on warrant there has been no prosecution, criminally or otherwise. (Citing *Simmons* v. *Sullivan,* 42 App. D. C. 523.)

No. 2721. Submitted January 6, 1915. Decided February 1, 1915.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia in an action for malicious prosecution.                              *Reversed.*

The COURT in the opinion stated the facts as follows:

Appeal by the defendant, Joseph Auerbach from a judgment in the supreme court of the District in an action for malicious prosecution. The first of the two counts of the declaration alleges that the defendant caused the arrest and prosecution of the plaintiff, William H. Freeman, upon the charge of stealing fourteen raincoats, one Panama hat, one suitcase, and four neckties. In the second count it is alleged that the defendant procured the arrest and prosecution of the plaintiff upon the charge of stealing a necktie of the value of $35\frac{1}{2}$ cents. It is, of course, further alleged in these counts that the prosecution terminated favorably to the plaintiff, and that he was discharged.

· According to the evidence for the plaintiff he was employed as janitor in the Warder Building in this city, where the defendant had a room, to which plaintiff had access. Early in April, 1913, the defendant complained to officer O'Dea of the detective force that someone had been stealing goods from his room. The next morning, April 3d, O'Dea and officer Evans called on the defendant, who said he had just found a necktie belonging to him in plaintiff's room. O'Dea testified that they then saw the assistant United States attorney in charge of prosecutions in the police court, who said that if they found a necktie in plaintiff's possession which the defendant claimed to be his, a charge of larceny *would be* filed against the plaintiff. Thereupon they went to plaintiff's room, and there found the necktie claimed by the defendant, but which the plaintiff said he had found on the waste basket in defendant's room, and therefore supposed the defendant intended it as a gift for cleaning his ink well. The detective then, *without any warrant having been issued,* took plaintiff to the municipal building to talk with a police official, and from there he was taken to the police station. The book of arrests at police headquarters contains an entry that Freeman was arrested April 3, 1913, on a charge of petit larceny of a necktie, and that "the charge had been nolle prossed'.' After he was taken to the police station plaintiff

communicated with his employer, who became surety for his appearance when wanted, but no bond appears to have been executed. The next morning the plaintiff, with his attorney, appeared in the police court, and the matter was continued until April 9th. He again appeared on the latter date, when "the case was ended." The assistant United States attorney testified "that there was no record of the Freeman case in the police court because *no papers were ever filed;*" that the defendant "said that he had no charge to make; that he did not care to swear to any papers, and that left witness without any case and without any record. There was no warrant in the case;" that the charge discussed with the detectives related to the larceny of a necktie; that there was also some discussion about raincoats, but that the defendant did not care to press any charge. The plaintiff's evidence further tended to show that, after his arrest on April 3d for the larceny of the tie, the defendant devoted some time to locating the raincoats, and that when he learned they had not been stolen he requested that nothing further be done "in the case." In other words, the defendant, until he was satisfied the plaintiff was not guilty of the larceny of the raincoats, was unwilling to ask the abandonment of the charge upon which he had been arrested. It is unnecessary to review the evidence for the defendant. At the close of all the evidence, counsel for the defendant asked for an instructed verdict upon each of the counts of the declaration, which request was overruled.

*Mr. John Ridout* for the appellant.

*Mr. Edward L. Gies* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

The question with which we are confronted is whether there was any basis for this action. According to Bouvier, malicious prosecution or malicious arrest import a wanton prosecution or arrest, made without cause, "by a *regular* process and proceed-

ing, which the facts did not warrant, as appears by the result."
There is a difference between a false imprisonment, which
means an imprisonment made without any process whatever, or
under color of process wholly illegal. Newell on Malicious
Prosecution, p. 8; says: "The terms 'malicious prosecution'
or 'malicious arrest' always in law suppose regular process and
proceedings, but that the facts did not warrant their issuing,
and which is to be decided by the result." In *Hicks* v. *Brant-
ley,* 102 Ga. 264, 29 S. E. 459, malicious prosecution was de-
fined as a judicial proceeding instituted by one person against
another, from wrongful or improper motives, and without prob-
able cause to sustain it. In *Burt* v. *Smith,* 181 N. Y. 1, 73
N. E. 495, 2 Ann. Cas. 576, it was defined as a "prosecution
begun in malice, without probable cause to believe that it can
succeed, and which finally ends in failure." In *Lewin* v.
*Uzuber,* 65 Md. 341, 4 Atl. 285, an action for malicious prose-
cution, a magistrate, at the instigation of the defendant, issued
a paper upon which the plaintiff was arrested, and which the
court of appeals was unable to recognize "as a warrant or writ,"
holding its illegality to be so apparent upon its face that it af-
forded one making the arrest no protection. "That being so,"
said the court, "it follows very clearly, we think, that the plain-
tiff cannot maintain this action. The distinction between an
arrest by an officer under a warrant legally issued and coming
to his hands in a lawful manner, and one made without war-
rant, or under process from a court having no authority to issue
it, is clearly drawn. * * * Hence the distinction at common
law between the action for false imprisonment and that for
malicious prosecution. The former is a suit for trespass, and
the latter an action on the case. The first can be maintained
only when the arrest is made without legal process; and the
latter, when the process of the law has been perverted and im-
properly used without probable cause and for a malicious pur-
pose."

In the present case, according to the evidence for the plain-
tiff, the arrest was for a petit larceny and without a warrant
having been issued. In other words, under the facts stated, it

was entirely without legal justification. No complaint was
ever filed against the plaintiff, and there are no papers on file
in the police court relating to the matter. How, then, can it
possibly be contended that there has been a prosecution of the
plaintiff? He has been arrested, it is true, and threatened with
prosecution, but that is not enough to form the basis of this ac-
tion. The machinery of the law must be set in motion in the
regular way, or no prosecution has been instituted. In *Simmons*
v. *Sullivan,* present term [42 App. D. C. 523], it was ruled
that in an action for malicious prosecution it is incumbent upon
the plaintiff to allege and prove "a discharge and termination
of the *criminal proceeding.*" Here no criminal proceeding was
instituted, and therefore there has been no prosecution, mali-
cious or otherwise.

Judgment reversed, with costs.                    *Reversed.*